IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Antonio Collins, | ) | Case No. 5:23-cv-03696-DCC |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Warden of Kirkland Correctional | ) | |
| Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

      Petitioner, proceeding pro se, is seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.  ECF No. 1.  In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), this matter was referred to United States Magistrate Judge Kaymani D. West for pre-trial proceedings and a Report and Recommendation ("Report").   On December 20, 2023, Respondent filed a Motion for Summary Judgment.  ECF No. 40.  Petitioner filed a Response in Opposition, and Respondent filed a Reply.  ECF Nos. 60, 61.  On July 30, 2024, the Magistrate Judge issued a Report recommending that the Motion be granted and the Petition be denied.  ECF No. 70.  Petitioner filed objections, and Respondent filed a Reply.  ECF Nos. 76, 77.

1

## APPLICABLE LAW AND ANALYSIS

### Standard of Review

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." (citation omitted)).

### Habeas Corpus

Petitioner's claims are governed by 28 U.S.C. § 2254(d), which provides that his petition cannot be granted unless the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

2

presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). Importantly, "a determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### *Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *Id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-

3

27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a post-conviction relief ("PCR") application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

4

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 298 (1989).

<u>*Cause and Actual Prejudice*</u>

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice,

5

the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this actual innocence standard, the petitioner's case must be truly extraordinary. *Carrier*, 477 U.S. at 496.

## DISCUSSION

As stated above, the Magistrate Judge recommends granting summary judgment in favor of Respondent. Petitioner objects to the Magistrate Judge's recommendations. The Magistrate Judge provided a thorough recitation of the relevant facts and applicable law, which the Court incorporates into this Order by reference. The Court's review of this matter has been de novo.

### *Procedurally Defaulted Grounds*

The Magistrate Judge recommends finding that Grounds Two, Four, and Five are procedurally defaulted for failure to raise them on appeal from the denial of Petitioner's application for post-conviction relief ("PCR"). In his objections, Petitioner acknowledges that Ground Five is procedurally defaulted. ECF No. 76 at 2–4. Upon review, the Court

6

agrees that Ground Five is procedurally defaulted; accordingly, summary judgment is granted as to this Ground.

With respect to Grounds Two and Four, Petitioner agrees that these Grounds were not raised to Supreme Court of South Carolina in his appeal from PRC; however, he asserts that he can establish cause to overcome the procedural default. First, he argues that PCR appellate counsel was ineffective for failing to raise these Grounds in the petition for writ of certiorari. Petitioner's argument appears to sound in equity as he contends that it is an inequitable result to prevent him from raising these Grounds when he was not responsible for drafting the petition for writ of certiorari. However, ineffective assistance of PCR appellate counsel is not a cause to excuse the default. _Martinez v. Ryan_, 566 U.S. 1, 9-10 (2012). Accordingly, this objection is overruled.

Petitioner further argues that his claims of ineffective assistance of PCR appellate counsel presents a novel issue because the same attorney represented him as PCR counsel and as PCR appellate counsel. He contends that there is no logical support for the conclusion that her performance as PCR counsel could constitute cause to overcome the procedural default while her performance as PCR appellate counsel could not. Upon review, the Court finds that Petitioner has presented no support for his assertion that this presents a novel issue. Further, while Petitioner may believe the result is illogical, the law is clear that ineffective assistance of PCR appellate counsel does not operate of excuse procedural default. Further, there is no allegation of ineffective assistance of PCR counsel, as Petitioner acknowledges that these claims were raised at PCR. Accordingly,

7

this is not a situation where it would be unreasonable for counsel to raise a claim for ineffective assistance against herself. *See, e.g., Hollingshead v. Shinn*, No. 18-cv-00188, 2020 WL 8812746, at *12 (D. Ariz. Aug. 6, 2020), *report adopted,* 2021 WL 871640 (D. Ariz. Mar. 9, 2021) ("Here, because Petitioner was represented by the same counsel during his trial, direct appeal, and first PCR petition, it would be unreasonable to expect that PCR counsel would have alleged that she herself was ineffective at trial. Thus, Petitioner's first opportunity to present a claim of ineffective assistance of trial counsel was in his second PCR petition."). Accordingly, this objection is overruled. Therefore, upon review, the Court agrees with the Magistrate Judge that Grounds Two, Four, and Five are procedurally defaulted and Petitioner has not established cause to excuse the procedural default. Summary judgment is granted as to these Grounds.

### Ground One—Admission of DNA Evidence/Contamination

The Magistrate Judge addresses Ground One in two parts. First, Petitioner alleges trial counsel was ineffective for failing to object to the admission of DNA evidence due to potential contamination. The Magistrate Judge recommended granting summary judgment as to this Ground. Upon review, the Court agrees.

In the order ruling on Petitioner's PCR application, the PCR court addressed trial counsel's performance under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). App. 1168–71. The PCR court found that,

> Applicant alleges trial counsel was ineffective for failing to fully develop or preserve the defense's argument that the DNA

8

should be excluded due to potential contamination. Counsel moved to suppress the DNA evidence by way of pre-trial motion where the contamination issue was argued in camera before Judge Kinard. Numerous officers testified to; responding to the crime scene, preservation of the scene, collection of blood evidence, returning to the scene and collection of further blood samples, recovery and processing of the .40 caliber firearm, processing of the Cadillac Deville, and the preservation of evidence. (R. pp. 51-102). At the conclusion of the hearing, Judge Kinard denied the motion to suppress finding Collins' arguments went to the weight of the evidence, which he could bring out before the jury and argue, but not its admissibility. Judge Kinard determined the testimony established the collection and preservation of the evidence by Beaufort police was sufficient to allow its admissibility and overruled Collins objection to this evidence on this basis. (R. pp. 102-105).

Counsel did not make a contemporaneous objection to the introduction of the DNA evidence at trial, thus failing to preserve the issue for appellate review. However, Applicant has failed to show any resulting prejudice from counsel's failure to preserve the issue for appellate review or developing the argument any further.

An issue that was raised on direct appeal but found to be unpreserved may be raised in the context of a post-conviction relief claim alleging ineffective assistance of counsel. McHam v. State, 404 S.C. 465, 475, 746 S.E.2d 41, 47 (2013) (citing McLaughlin v. State, 352 S.C. 476, 575 S.E.2d 841 (2003); Foye v. State, 335 S.C. 586, 518 S.E.2d 265 (1999)). However, to be entitled to relief on such a claim, an applicant must establish the underlying claim is meritorious and would have resulted in a reversal on appeal to a reasonable probability. McHam, 404 S.C. at 475-76, 746 S.E.2d at 47 ("Since the Fourth Amendment issue was not considered on direct appeal because it was unpreserved, an examination of the merits of the issue is appropriate in analyzing the prejudice

prong in McHam's PCR claim."). Therefore, before a post-conviction relief court can grant relief on a claim of ineffective assistance of trial counsel for failing to preserve a ground for appellate review, the court must determine the underlying claim was meritorious and a reasonable probability that it would have resulted in reversal and a new trial.

This Court finds that Applicant has failed to meet his burden in showing that counsel's failure to preserve the issue for appeal resulted in any prejudice. Here, Applicant would have to show that the trial court would have abused its discretion in denying a timely objection to the introduction of the DNA evidence considering the contamination argument made by counsel. The admission or exclusion of evidence is within the sound discretion of the trial judge and is reversible only for an abuse of discretion. State v. Pagan, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006); State v. Stanley, 365 S.C. 24, 33, 615 S.E.2d 455, 460 (Ct. App. 2005); State v. Patterson, 337 S.C. 215, 522 S.E.2d 845 (Ct. App. 1999). The testimony concerning DNA evidence complied with the requirements set forth in State v. Council, 335 S.C. 1, 515 S.E.2d 508 (1999). The Court held: "Any evidence concerning contamination, therefore went to the weight of the testimony, not its admissibility." Ramsey, 345 S.C. at 616. The Court finally noted that the mixture of DNA evidence is not a basis for the exclusion of the DNA testing. Id., *referencing* Oregon v. Lyons, 124 Or. App. 598, 863 P.2d 1303 (1993)(finding the potential for DNA contamination presents an "open field" for cross examination at trial, but does not indicate the PCR method of DNA testing is inappropriate for forensic use).

Under the Rule 702 analysis used by the Court in Ramsey, Collins has not shown that possible contamination or cross-contamination indicates the method of DNA testing used in this case is inappropriate for forensic use. DNA testing whether PCR or STR is scientifically reliable. See Ramsey; Council, 335 S.C. 1, 515 S.E.2d 508; State v. Ford, 301 S.C. 485, 392 S.E.2d 781 (1990).

10

Furthermore, in <u>State v. Holmes</u>, 361 S.C. 333, 605 S.E.2d 19 (2005), reversed on other grounds <u>Holmes v. South Carolina</u>, 547 U.S. 319, 126 S.Ct. 1727 (2006)(reversed on issue of 3rd party guilt evidence), our Supreme Court held: "(T]he fact the forensic evidence may have been compromised by the unprofessional manner in which the evidence was collected goes to the weight of the evidence, not its admissibility." <u>Holmes</u>, 361 S.C. at 343, fn 8, *citing* <u>State v. Carter</u>, 344 S.C. 419, 544 S.E.2d 835, (2001); <u>State v. Smith</u>, 326 S.C. 39, 482 S.E.2d 777 (1997). Given Collins' assertion on appeal, this appeal must be dismissed with prejudice. <u>State v. Holmes</u>.

Here, the trial judge would have been well within their discretion in overruling any potential objection to the DNA evidence on the contamination ground and thus the issue would not have been meritorious on appeal. There was no evidence presented that the DNA samples were in fact contaminated or that the procedures used by SLED were unreliable. Even if evidence was presented that the samples could have been contaminated, the trial court should allow the evidence to be presented to the jury for their consideration as to how much weight to give that fact. Therefore, Applicant has failed to show how he was prejudiced by counsel's failure to preserve or more fully develop the contamination issue. This Court finds that Applicant has failed to meet his burden and dismisses this allegation with prejudice.

App. 1171–74. The PCR court's denial of Petitioner's ineffective assistance of counsel claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those

11

considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

In his objections, Petitioner argues that the PCR court failed to conduct a proper analysis under *United States v. Cronic*, 466 U.S. 648 (1984). ECF No. 76 at 4–5. He contends that trial counsel's errors cannot be sufficiently appreciated under the standard *Strickland* analysis.

With respect to Petitioner's argument that the proper standard for reviewing counsel's performance is found in *Cronic*, rather than *Strickland*, the Court disagrees. The United States Supreme Court has made clear that *Cronic*, which establishes that prejudice may be presumed in some instances, is only applicable in three distinct situations: (1) when there is a "'complete denial of counsel[,]'" (2) when "'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing[,]'" and (3) when "counsel is called upon to render assistance under circumstances where [even] competent counsel very likely could not . . . ." *Bell v. Cone*, 535 U.S. 685, 695–96 (2002) (quoting *Cronic*, 466 U.S. at 659). None of these situations is present in Petitioner's case; accordingly, *Strickland*, not *Cronic*, applies in this case.

Turning to the remainder of this Ground, the Court agrees with the Magistrate Judge that evidence in the record supports the PCR court's determination. Officers testified at trial regarding their actions in preserving the scene and collecting the DNA evidence. App. 51–102 The evidence introduced at trial supports the PCR court's determination that the trial court would have been within its discretion in denying any

objection to the DNA evidence as contaminated. The record further supports the PCR court's determination that this argument would not have been successful on appeal; accordingly, Petitioner cannot establish prejudice for failing to preserve the issue. Therefore, the Court agrees with the Magistrate Judge that the PCR court's decision was neither contrary to nor an unreasonable application of applicable Supreme Court precedent nor did it confront a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrive at a different result. Accordingly, summary judgment is appropriate with respect to Ground One—Admission of DNA/Contamination.

**Ground One—Admission of DNA Evidence/Inadequate Consent and No Probable Cause**

In the remaining portion of Ground One, Petitioner argues that trial counsel was ineffective for failing to object to the admission of DNA evidence at the appropriate time and to preserve the issue for appeal. The Magistrate Judge considered this Ground on the merits and recommended granting summary judgment. Upon review, the Court agrees.

In the order ruling on Petitioner's PCR application, the PCR court addressed trial counsel's performance under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). App. 1168–71. The PCR court found that,

> Applicant alleges counsel was ineffective for failing to preserve all arguments concerning the suppression of the

DNA evidence for appellate review. Applicant alleges counsel failed to preserve the voluntariness of the buccal swab conducted in Florida, sufficiency of the probable cause to support the Schmerber order, the denial of the suppression motion by Judge McDonald, and the DNA samples being fruits of the poisonous tree that would not be inevitably discovered. Counsel failed to properly preserve these issues for appellate review, however, Applicant has failed to show prejudice where these issues would not have been meritorious on appeal if properly preserved.

This Court finds that Applicant has failed to meet his burden in showing that counsel's failure to preserve the issue for appeal resulted in any prejudice. Here, Applicant would have to show that the trial court committed clear error in allowing the DNA evidence from the 1st Buccal swab in at trial. "The standard of review of Fourth Amendment search and seizure issues on appeal is deferential and is limited to determining whether any evidence supports the trial court's finding, with this Court only being able to reverse the ruling of a trial judge where there is clear error. State v. Taylor, 401 S.C. 104, 736 S.E.2d 663 (2013). As a result, if there is any evidence to support the trial judge's ruling as to the validity of a search, with or without a warrant, it will be affirmed on appeal. Id.; State v. Brown, 401 S.C. 82, 736 S.E.2d 263 (2012).

A DNA buccal swab constitutes a search and under the Fourth Amendment. "Warrantless searches and seizures are reasonable within the meaning of the Fourth Amendment when conducted under the authority of voluntary consent." State v. Pichardo, 367 S.C. 84, 105, 623 S.E.2d 840, 851 (Ct. App. 2005). It is well established that one of the well-delineated exceptions to the search warrant requirement is a search conducted pursuant to a valid consent given by the proper party. Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256 (1946); Zap v. United States, 328 U.S. 624, 66 S.Ct. 1277 (1946); Palacio v. State, 33 S.C. 506, 511 S.E.2d 62 (1999). When the prosecution seeks to rely upon the consent

of the defendant to justify the search, they have the burden of proving that the consent was, in fact, freely and voluntarily given. Scheckcloth v. Bustamonte, 412 U.S. 218, 93 S.Ct 2041 (1973); Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct 1788 (1968); State v. Brannon, 347 S.C. 85, 552 S.E.2d 773 (Ct. App. 2001). Whether a defendant voluntarily consents to a search is a question to be determined by the trial judge based on the totality of the circumstances. United States v. Mendenhall, 446 U.S. 544, 558-59, 100 S.Ct. 1870, 1879 (1980); State v. Harris, 277 S.C. 274, 286 S.E.2d 137 (1982); State v. Bailey, 276 S.C. 32, 274 S.E.2d 913 (1981); State v. Adams, 377 S.C. 334, 339, 659 S.E.2d 272, 275 (Ct. App. 2008). When the issue of voluntary consent is contested by contradictory testimony, it is an issue of credibility for the trial judge to resolve. State v. Wallace, 269 S.C. 547, 238 S.E.2d 675 (1977); State v. Greene, 330 S.C. 551, 499 S.E.2d 817 (Ct. App. 1997).

Here, given the totality of the circumstances, Judge McDonald properly found the State had proven Collins had freely and voluntarily consented to the taking of the buccal sample at the Miami/Dade County Jail. (R. pp. 649-709; Court's Exhibit 1 (Consent Form); Order Denying Defense Motion to Suppress Buccal Swabs). Schneckloth v. Bustamonte; United States v. Mendenhall. The credible testimony at the suppression hearing showed Collins was not threatened or coerced by Detective Segovia. Schneckloth. No physical punishment or threat of punishment was used to by Segovia to obtain consent. Id. Collins was not misled by Detective Segovia to get him to give the buccal sample. Segovia testified the only thing he informed Collins of was he was being investigated for a series of crimes. Although police were not required to, Collins was fully informed of his right to deny consent to the buccal swab. Id.; State v. Forrester, 334 S.C. 567, 514 S.E.2d 332 (Ct App. 1999)(though not required, whether defendant was informed and knew he had the right to deny consent is a factor to be considered in determining if the consent was freely and voluntarily made), reversed on other grounds, 343

S.C. 637, 541 S.E.2d 837 (2001); Wallace, 269 S.C. 547, 238 S.E.2d 675 (same); State v. Newman, 261 S.C. 35.2, 200 S.E.2d 82 (1973)(similar). The meeting between Collins and Segovia lasted six (6) minutes. Schneckloth. Collins reviewed and executed a Voluntary Consent to give his buccal sample. (R. p. 719, Court's Ex. 2). Collins was informed in the notice that he had the right to refuse consent [Schneckloth]; but, he did not refuse and signed the waiver form.

Therefore, Applicant has failed to show that the failure to preserve the suppression of the 1st Buccal swab at trial would have been a meritorious issue on appeal. This Court finds that Applicant has failed to show any resulting prejudice from counsel's failure to preserve the issue for appeal.

In order for Applicant to show prejudice resulting from the failure to preserve the objection to the issuance of the Schmerber order he would need to show the trial court lacked a substantial basis for concluding probable cause existed. State v. Herring, 387 S.C. 201, 212, 692 S.E.2d 490, 495 (2009). Applicant would also need to overcome the great deference a reviewing appellate court would give the findings of the trial court. State v. Jones, 342 S.C. 121, 536 S.E.2d 675 (2000).

When determining the propriety of the issuance of a warrant or court order to conduct a search, the duty of this Court is simply to determine whether the issuing court had a substantial basis for concluding probable cause existed. State v. Herring, 387 S.C. 201, 212, 692 S.E.2d 490, 495 (2009). In making such a decision, this Court must consider the totality of the circumstances. Jones, 342 S.C. 121, 536 S.E.2d 675 (under this test, a reviewing court considers all circumstances, including status, basis of knowledge, and veracity of informant, in determining whether probable cause existed to issue a search warrant); State v. Dupree, 354 S.C. 676, 683, 583 S.E.2d 437, 441 (Ct. App. 2003).

16

A search warrant or <u>Schmerber</u> Order may issue only upon a finding of probable cause. <u>State v. Weston</u>, 32 S.C. 287, 290, 494 S.E.2d 801, 802 (1997). The affidavit or testimony at a <u>Schmerber</u> hearing must contain sufficient underlying facts and information upon which the judge may make a determination of probable cause. <u>Dupree</u>, 354 S.C. 676, 583 S.E.2d 437. "[T]he duty of a reviewing court is simply to ensure that the magistrate [or circuit court] had a 'substantial basis' for ... conclud[ing] that probable cause existed." <u>Weston</u>, 329 S.C. at 290-91, 494 S.E.2d at 802-03. However, all that is necessary for the issuance of a warrant or <u>Schmerber</u> Order is probable cause. <u>State v. Covert</u>, 382 S.C. 205, 675 S.E.2d.740 (2009).

Probable cause does not mean absolute certainty. <u>State v. Dean,</u> 282 S.C. 136, 317 S.E.2d 744 (1984). South Carolina has adopted the "totality of the circumstances" test of <u>Illinois v. Gates</u>, in determining whether sufficient probable cause exists to issue a search warrant or <u>Schmerber</u> order. <u>State v. Bellamy</u>, 336 S.C. 140, 143, 519 S.E.2d 347, 348 (1999). The task of the issuing court is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit or testimony before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. <u>Gates</u>, 462 U.S. at 238 (emphasis added); *accord* <u>Herring</u>, 387 S.C. at 212, 692 S.E.2d at 495-96; <u>State v. Johnson</u>, 302 S.C. 243, 395 S.E.2d 167 (1990)(adopting <u>Gates</u> test). Probable cause "does not demand any showing that such a belief be correct or more likely true than false." <u>State v. Bowie</u>, 360 S.C. 210, 600 S.E.2d 112 (Ct. App. 2004), *quoting* <u>Brown</u>, 460 U.S. at 742. In determining whether a warrant or <u>Schmerber</u> order should issue, judges are concerned with probabilities not certainties. <u>Bowie</u>, 360 S.C. 210, 600 S.E.2d 112, citing <u>Sullivan</u>, 267 S.C. at 17, 230 S.E.2d at 624.

Information in support of a search warrant or <u>Schmerber</u> order may be based on hearsay information and need not reflect the direct personal observations of the affiant. <u>Sullivan</u>, 267 S.C. at 614-15, 230 S.E.2d at 623 (search warrant can be supported by information given to the affiant by other officers); see <u>Jones v. United States</u>, 362 U.S. 257 (1960); <u>United States v. Ventresca</u>, 380 U.S. 102, 108 (1965)(same); <u>State v. York</u>, 250 S.C. 30, 156 S.E.2d 326 (1967)(same); <u>United States v. Weiebir</u>, 498 F.2d 346 (4th Cir. 1974).

The decision to issue a search warrant or <u>Schmerber</u> order must include consideration of the veracity of the person supplying the information and the basis of the affiant's knowledge. <u>State v. Adolphe</u>, 314 S.C. 89, 441 S.E.2d 832 (Ct. App. 1994). "The 'experience of a police officer is a factor to be considered in the determination of probable cause.'" <u>Dupree</u>, 319 S.C. at 459, 462 S.E.2d at 282, citation omitted. Eyewitnesses and non-confidential informants are often given a higher level of credibility when supplying information to support probable cause to search. <u>See State v. Driggers</u>, 322 S.C. 506, 473 S.E.2d 57 (Ct. App.1996).

To determine probable cause exists to obtain nontestimonial identification evidence the State must show there is "(1) probable cause to believe the suspect has committed the crime, (2) a clear indication that relevant material evidence will be found, and (3) the method used to secure it is safe and reliable." <u>State v. Baccus</u>, 367 S.C. 41, 53-54, 625 S.E.2d 216, 222-23 (2006), *quoting* <u>In re Snyder</u>, 308 S.C. 192, 195, 417 S.E.2d 572, 574 (1992); <u>State v. Jenkins</u>, 398 S.C. 215, 224, 727 S.E.2d 761, 766 (Ct. App. 2012). <u>See also State v. Register</u>, 308 S.C. 534, 538, 419 S.E.2d 771, 773 (1992). Additional factors to be weighed are the seriousness of the crime and the importance of the evidence to the investigation. <u>Register</u>, 308 S.C. at 538, 419 S.E.2d at 773; <u>State v. Simmons</u>, 384 S.C. 145, 682 S.E.2d 19 (2009). The circuit court is required to balance the necessity for acquiring involuntary nontestimonial identification evidence against

18

constitutional safeguards prohibiting unreasonable bodily intrusions, searches, and seizures. Id. "Probable cause may be found somewhere between suspicion and sufficient evidence to convict." Geer, 391 S.C. at 197; State v. Blassingame, 338 S.C. 240, 250,525 S.E.2d 535,540 (Ct. App. 1999). "[T]o show that a suspect's DNA is relevant under the second element of Baccus, the State must show there is other DNA evidence in the case to which it can be compared, or in some other manner clearly indicate the relevance of the DNA sought." Jenkins, 398 S.C. at 224, 727 S.E.2d at 766.

Investigator Wilson testified to fact there was an eyewitness to the murder, Enrekae Miles, and the fact that Miles was forced at gunpoint by two (2) men to the victim's front porch. She testified to the fact there was a shootout between the victim and the shooter, including shell casings from two (2) different guns found at the scene in two (2) different locations. She testified to the fact the victim died from the gunshot wounds inflicted by the shooter who forced his way into the victim's house before the exchange of gunfire. The investigator testified to the substance of the 911 call received the night of the murder by Beaufort police in which the 911 caller, who lived near the victim, stated there were two (2) black males involved and one (1) of them stated before getting in a car and leaving the area at he had been shot in the leg. The investigator testified to the identification of the car involved in the crime as being a beige or creme colored Cadillac Deville by witnesses in the area of the crime. The investigator testified to the discovery of the blood drops at the crime scene, on the road leading away from the victim's residence, on the .40 caliber pistol found in the grass where the blood trail ended, and in the Cadillac Deville recovered in Jasper County, and how police determined the shooter/perpetrator was wounded during the exchange of gunfire with the victim, from the blood drops, the blood trail, and the blood in the car. She testified to the fact samples from the above described locations were taken and forwarded to SLED for D.N.A. analysis. She testified to the fact it was

determined through D.N.A. analysis that the same individual left the blood drops at the crime scene, on the road leading away from the victim's residence, on the .40 caliber pistol, and in the back seat of the Cadillac Deville. The investigating officer testified how police identified Antonio Collins, as a suspect in this case, from interviewing a named federal informant, Gussie Goldwire, who was related to Collins, and knew him by Antonio Wilson and witnessed Collins and Jeremy Murphy arrive at Goldwire's residence in Jasper the night of the murder in Murphy's Cadillac and Collins had recently been shot in the leg and was being helped from the car and into the residence. Goldwire also informed police Collins was from Florida. The investigating officer testified how police also interviewed Jeremy Murphy, the owner of the car [the Cadillac Deville from which blood stains were found], who informed police Collins had his car the night of the murder. Murphy knew Collins as Antonio from Florida. The investigating officer testified to her further investigation and research and how she identified Collins as the person both the named informant [Goldwire] and Murphy identified and were referring to was in fact Applicant Antonio Eugene Collins by using the names of relatives of Collins whose names Goldwire had provided to the investigator and those same relatives names showed up in Collins' police intelligence reports. The investigator also testified to the fact Collins was determined to be a resident of Florida, as Murphy had informed police, and he was located in the Miami - Dade County jail and that Miami police approached Collins and obtained a buccal swab from him, that swab was sent to SLED, and it matched the DNA of the blood found on the victim's front porch, on the road leading away from the crime scene, on the gun found near the end of the blood trail, and in Murphy's Cadillac Deville. And, she testified to the scars she saw on Collins' legs in photos taken by Miami police which could be attributable to a gunshot wound. (R. pp. 620-41).

This Court finds that Applicant has failed to show that had this issue been properly preserved it would have been meritorious

on appeal. As noted by the citations to the record above, the trial court had a substantial basis for finding that probable cause existed to warrant the issuance of the order. Therefore, this Court finds that Applicant has failed to meet his burden in showing that had this issue been preserved it would have been meritorious on appeal, thus failing to show any resulting prejudice. This Court dismisses this allegation with prejudice.

Applicant alleges that counsel was deficient for failing to properly preserve for appellate review whether the DNA samples were fruits of the poisonous tree and would not have been inevitably discovered. To succeed on this issue Applicant would first need to show that the DNA evidence was not properly obtained through the avenues previously examined, that the DNA evidence was in fact fruits of the poisonous tree, and that if properly preserved the issue would have been meritorious on appeal. First, this Court finds that the DNA was properly admitted through the avenues previously examined and thus would not have been a meritorious issue on appeal had it been properly preserved. Second, however, this Court will examine the allegation on its own merits to determine whether Applicant would have been prejudiced had this issue been properly preserved.

This Court previously determined, law enforcement had probable cause to obtain a Schmerber order to obtain Collins' D.N.A. even without the results of the 1st buccal swab based on the information developed by police during the investigation of this murder including the statements from two (2) named individuals, Gussie Goldwire and Jeremy Murphy, which had been corroborated by physical evidence, and their follow up investigation which determined the person Goldwire and Murphy were referring to was Applicant Antonio Eugene Collins. As a result, the 1st buccal swab would have been inevitably discovered. United States v. Whitehorn, 813 F.2d 646 (4th Cir. 1987); State v. Brown, 289 S.C. 58, 347 S.E.2d 882 (1986) (inevitable discovery is an exception to the exclusionary rule); Jenkins, *supra* (remanding to determine if

inevitable discovery applied); State v. Spears, 393 S.C. 466, 482, 713 S.E.2d 324,332 (Ct. App. 201l) (evidence may be admitted "if the government can prove evidence would have been obtained inevitably.")

Furthermore, the 2nd buccal swab was a lawful search incident to arrest. Maryland v. King, 133 S.Ct. 1958 (2013). When Collins appeared before Judge Dennis for the Schmerber hearing, he had already been arrested for murder, a dangerous and violent crime. In Maryland v. King, the United States Supreme Court recognized that when police take a buccal swab from a defendant arrested for a dangerous felony, the search is no different than police taking the fingerprints of an arrested subject or taking a booking photograph. It is a lawful search incident to arrest, and individualized suspicion is not necessary. As a result, the taking of the 2nd buccal swab did not violate the Fourth Amendment. Id. Even if the trial court had not issued the Schmerber order, the State would have inevitably gotten Applicant's DNA through buccal swab as a search incident to arrest. Thus, Collins' DNA would have been inevitably discovered. Id. The United States Supreme Court decided Maryland v. King, supra on June 3, 2013. Collin's trial did not begin until October 24, 2013. As a result, the State would have inevitable discovered Collins' DNA in any event. Id.; Nix v. Williams, 467 U.S. 431 (1984); United States v. Allen, 159 F.3d 832 (4th Cir. 1998). See S.C. Code Ann. Section 23-3-620 (effective January 1, 2009).

Applicant has failed to show any meritorious basis for objecting to the introduction of the DNA evidence as being fruit of the poisonous tree or that the issue would have been meritorious on appeal had it been properly preserved. Therefore, Applicant has failed to meet his burden in proving that he was prejudiced by counsel's failure to preserve the issue for appellate review. This Court dismisses this allegation with prejudice.

App. 1174–83.  The PCR court's denial of Petitioner's ineffective assistance of counsel claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.  First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

In his objections, Petitioner argues that the detectives used deceptive practices such that the taking of his DNA was actually involuntary.  ECF No. 76 at 5–7.  He contends that there is evidence that he was lied to about the nature of the investigation.  He further contends that the Magistrate Judge's determination that his DNA would have been inevitably discovered is flawed.  Petitioner alleges that the *Schmerber*[1] order issued by the state court was irrevocably flawed and reliance on it is arbitrary and unreasonable.[2]

There is evidence in the record that supports the PCR court's determination. The PCR court found that an appeal of that issue would not have been meritorious even if properly preserved.  He properly cited to evidence in the record, mainly found in the trial court's ruling and particularly regarding the existence of probable cause, and to controlling

---

[1] *Schmerber v. California*, 384 U.S. 757 (1966).

[2] Petitioner argues that this Ground should be reviewed pursuant to *Cronic*.  As explained above, the Court finds Petitioner's Grounds are properly analyzed pursuant to *Strickland*.

state law. *See Evans v. Smith*, 220 F.3d 306, 312 (4th Cir. 2000) (holding that federal habeas relief is not available for a claim adjudicated on the merits by the state court unless it resulted in resulted in a decision that was an unreasonable determination of the facts based upon the evidence presented in the state court proceeding). Here, as explained in detail by the PCR court, there was ample evidence in the record to support the trial court's decision; accordingly, trial counsel cannot be found to have failed to preserve a meritorious ground for appeal.[3] Therefore, the Court agrees with the Magistrate Judge that the PCR court's decision was neither contrary to nor an unreasonable application of applicable Supreme Court precedent nor did it confront a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrive at a different result. Accordingly, summary judgment is appropriate with respect to Ground One—Admission of DNA Evidence/Inadequate Consent and No Probable Cause.

**Grounds One and Three—Ineffective Assistance of Appellate Counsel**

In Ground One, Petitioner alleges appellate counsel was ineffective for failing to raise and argue the DNA contamination and improper search and seizure issue; in

---

[3] Petitioner's objections focus on the credibility of the officers. However, "federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)) (alteration in original). Rather, "for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear." *Id*. at 324. No such showing has been made here. Accordingly, any objection based upon a state court's credibility finding is overruled.

Ground Three, Petitioner alleges appellate counsel was ineffective for failing to properly raise issues with citation to legal authority and for failing to reply to erroneous information in the State's response. The Magistrate Judge determined that the PCR court's ruling was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. Upon review, the Court agrees with the recommendation of the Magistrate Judge.

In the order ruling on Petitioner's PCR application, the PCR court addressed trial counsel's performance under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).[4] App. 1168–71. The PCR court found that,

> Applicant alleges appellate counsel was deficient for failing to properly raise issues on appeal, resulting in the appeal being dismissed.
>
> Appellate counsel testified at the evidentiary hearing that she did not have a particular reason for failing to cite to the record and that she did not cite to legal authority because she could not find any that supported her positions. Counsel furthered testified that she felt her representation concluded when she filed the brief and that she was not responsible for subsequent replies. Counsel went on to testify about the Appellate Practice Project where she was assigned the case. Following

---

[4] *See Herrington v. Dotson*, 99 F.4th 705, 720 (4th Cir. 2024) (holding that a claim for ineffective assistance of direct appeal counsel is analyzed under "the highly deferential *Strickland* two-part test, requiring [a petitioner] to show both (1) that counsel's deficient performance fell below an objective standard of reasonableness and (2) prejudice, meaning that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (internal quotation marks omitted)).

the testimony concerning the Appellate Practice Project, this Court left the record open for additional testimony to be elicited from Chief Public Appellate Defender Robert Dudek. Dudek testified generally about the Appellate Practice Project. Dudek testified that the CLE goes over appellate practices and that the attorneys were expected to turn in their appellate filings to be printed. Dudek testified that he was not a supervisor to the attorneys in the project, his office does not make substantial edits to the documents submitted to be printed, and that the attorney was responsible for handling the case. Dudek testified that the appeal was dismissed because the issues were abandoned for failing to cite to legal authority, the issues were not raised in the same manner on appeal as at trial, and that the issues were not properly preserved. Dudek testified that he agreed that the issues were not properly preserved at trial. Dudek testified that he did not recall counsel consulting him concerning potentially filing for rehearing. Dudek testified that since the issues were procedurally barred there would not have been merit in filing for rehearing. Dudek testified that he felt that counsel was deficient in her representation and felt a new trial was the appropriate remedy, however, failed to cite a meritorious issue counsel failed to raise.

First, this Court is highly concerned with the efficacy and practices of the Appellate Practice Project. This Court notes that complex appellate cases are being distributed to attorneys with potentially no experience in area of appellate practice. The lack of oversight in this area is of grave concern to this Court. However, Applicant has failed to show how appellate counsel's deficiency in failing to file an appropriate brief prejudiced Applicant. As indicated by the appellate court in its order dismissed the appeal, none of the issues raised were properly preserved for appellate review. Even if appellate counsel had properly cited to legal authority to support the positions argued the appeal would have been dismissed for lacking in issue preserved for review. Further, Applicant has failed to elicit testimony from appellate counsel

or Robert Dudek as to what issues were properly preserved for appellate review that could have been meritorious if raised. Applicant speculates that such issues existed and if raised would have been meritorious on direct appeal. This Court finds that Applicant has failed to meet his burden under Strickland and Cronic. This Court finds that Applicant has failed to show prejudice resulting from appellate counsel's deficiency or such occasion to find presumed prejudice under Cronic. This Court therefore dismisses this allegation with prejudice.

App. 1185–87.  The PCR court's denial of Petitioner's ineffective assistance of appellate counsel claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.  First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

In his objections, Petitioner contends that appellate counsel was clearly deficient. ECF No. 76 at 7.  He essentially argues that appellate counsel's failures have been overlooked due to trial counsel's deficiencies.  He contends that meritorious issues were not preserved by trial counsel; therefore, the PCR court determined that appellate counsel was not ineffective for failing to raise them.

The Court understands Petitioner's frustration and specifically acknowledges that Robert Dudek, Chief Appellate Defender, testified that he believed Petitioner's appellate counsel had been deficient.  However, Petitioner's argument does not accurately reflect

27

the findings of the PCR court.  The PCR court reviewed Petitioner's claims on the merits in reviewing his ineffective assistance of counsel claims.  Based upon that analysis, he determined that they would not have been meritorious on appeal.  Upon review of Petitioner's claims for ineffective assistance of PCR counsel, the PCR court found that he could not show resulting prejudice because the claims were not meritorious.  Mr. Dudek also did not identify any meritorious claim that was forfeited due to appellate counsel's failure.  Therefore, the Court agrees with the Magistrate Judge that the PCR court's decision was neither contrary to nor an unreasonable application of applicable Supreme Court precedent nor did it confront a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrive at a different result. Accordingly, summary judgment is appropriate with respect to Petitioner's claims for ineffective assistance of appellate counsel.

### Evidentiary Hearing

Petitioner requests an evidentiary hearing.  Under the AEDPA, evidentiary hearings are generally prohibited even when a habeas petitioner has failed to develop the factual basis of a claim in his state court proceedings. 28 U.S.C. § 2254(e)(2); *see Cullen v. Pinholster*, 563 U.S. 170, 181–82, 183 n.4 (2011) (recognizing both that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits" and also that for claims for which the factual basis was not developed in state court "§ 2254(e)(2) bars a federal court from holding an evidentiary hearing, unless the applicant meets certain statutory requirements"). However, § 2254(e)(2)

28

provides that, if a prisoner "has failed to develop the factual basis of a claim in State court proceedings," a federal court may hold "an evidentiary hearing on the claim" in only two limited scenarios: either the claim relies on (1) a "new" and "previously unavailable" "rule of constitutional law" made retroactively applicable by the Supreme Court, or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence." § 2254(e)(2)(A)(i), (ii). "If a prisoner can satisfy either of these exceptions, he also must show that further factfinding would demonstrate, 'by clear and convincing evidence,' that 'no reasonable factfinder' would have convicted him of the crime charged." *Shinn*, 142 S. Ct. at 1734 (quoting § 2254(e)(2)(B)). "Finally, even if all of these requirements are satisfied, a federal habeas court still is not *required* to hold a hearing or take any evidence." *Id.* (emphasis in original).

Here, Petitioner fails to show why an evidentiary hearing is necessary. Accordingly, the request is denied.

## CONCLUSION

The Court agrees with the recommendation of the Magistrate Judge. The Motion for Summary Judgment [40] is **GRANTED** and the Petition is **DENIED**.

## CERTIFICATE OF APPEALABILITY

The governing law provides that:

> (c) (2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

29

> (c) (3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies the standard by demonstrating that reasonable jurists would find this Court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **DENIED**.

      **IT IS SO ORDERED**.

s/ Donald C. Coggins, Jr.
United States District Judge

September 18, 2024
Spartanburg, South Carolina